IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

TIMOTHY C. SAUNDERS,   )
           )
           ) 1:20-CV-00224-RAL
   Petitioner,    )
           )
  vs.         ) RICHARD A. LANZILLO
           ) UNITED STATES MAGISTRATE JUDGE
           )
LAUREL HARRY, WARDEN OF SCI- )
CAMP HILL, PENNSYLVANIA  ) MEMORANDUM OPINION AND ORDER
ATTORNEY GENERAL'S OFFICE,  ) ON PETITION FOR WRIT OF HABEAS
DISTRICT ATTORNEY OF ERIE  ) CORPUS
COUNTY,        )
           ) ECF NO. 25
           )
   Respondents,   )
           )

Presently before the Court is a petition seeking a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 25) filed by Timothy C. Saunders, an individual currently incarcerated with the Pennsylvania Department of Corrections.[1]  In his application, Saunders raises claims he believes entitle him to habeas relief.[2]  For the reasons outlined below, the Court will deny Saunders' Petition.[3]

I.  Factual and Procedural Background

Saunders' state court conviction arises from his setting fire to the vehicle of his former girlfriend on June 22, 2016.  The Pennsylvania Superior Court, in affirming the judgment of

---

[1]  28 U.S.C. § 2254(a) confers jurisdiction upon this Court to hear a petition for writ of habeas corpus filed by an individual who claims to be in custody pursuant to a state court judgment in violation of the Constitution of the United States.

[2] Although the federal habeas statutes use the term "application," the federal courts, including the United States Supreme Court, use the term "petition" and "application" interchangeably.  *See, e.g., Crabb v. Eckard*, 2015 WL 4879071, at *3 n.3 (M.D. Pa. Aug. 14, 2015).  This Court will do likewise.

[3] The Petitioner and Respondent have consented to the jurisdiction of a United States Magistrate Judge in these proceedings pursuant to 28 U.S.C. § 636(c).  *See* ECF Nos. 17, 19.

sentence, recounted the factual background and evidence that led to Saunders' arrest and

conviction:

> The convictions arose from [Saunders'] actions on June 22, 2016 in setting fire to the vehicle of a former girlfriend, Deborah Lynn Marshall, in a parking lot at Eaton Reservoir, a/k/a Bulls Dam, in North East Township, Erie County, Pennsylvania. That day, while Marshall was walking with her dog around the reservoir, [Saunders] met up with her and made unwanted advances toward her. When Marshall rejected the advances, [Saunders] became angry and acted aggressively toward Marshall. Marshall ran from [Saunders] toward her vehicle, a 2004 green Jaguar. [Saunders] followed Marshall, entered his own vehicle and drove into the lot where Marshall's vehicle was parked. [Saunders] parked right beside Marshall's Jaguar, in the space in between the Jaguar and the space where the vehicle of Scott Bigley was parked. Bigley, a friend of Marshall's, was sitting in his vehicle waiting for Marshall to return from the walk. Marshall spotted Bigley, quickly got inside his vehicle and asked him to drive away to escape from [Saunders]. Confused, Bigley began to drive away. [Saunders] continued toward Bigley's vehicle and struck Bigley's windshield on the passenger side with his fist, cracking the windshield. Bigley and Marshall drove off. They stopped at a nearby establishment where they called friends to assist them in retrieving Marshall's vehicle. Approximately [twenty] minutes or so after Bigley and Marshall had fled the reservoir parking lot, Bigley and one of the friends returned to the parking lot where they found the back portion of Marshall's vehicle engulfed in flames. Firefighters and emergency personnel were called to the scene and the fire was extinguished. The evidence established the fire to Marshall's vehicle originated on the rear passenger side; the fire was incendiary in nature and [Saunders] caused the fire.

*Commonwealth v. Saunders*, 2018 WL 798655, at *1–2 (Pa. Super. Ct. Feb. 9, 2018) (quoting

Trial Court opinion at 1-2).  This Court presumes that the Superior Court's factual findings were

correct.  *See* 28 U.S.C. § 2254(e)(1).

In recounting the procedural history of this case, the Court takes judicial notice of the

state court's trial and appellate dockets in criminal case CP-25-CR-0002794-2016, which are

available to the public online at https://ujsportal.pacourts.us (last visited on March 17, 2022).

*See, e.g., Burley v. Parra*, 2021 WL 4594674, at *1 (W.D. Pa. Oct. 6, 2021).  Citation to the state court dockets will be omitted, unless necessary for clarity or emphasis.

On December 20, 2016, at the conclusion of a nonjury trial, the state court convicted Saunders of one count of reckless burning or exploding, and one count of arson involving danger of death of bodily injury, violations of 18 Pa. C.S. §§ 3301(d)(2) and 3301(a)(1)(i), respectively. On February 1, 2017, Saunders was sentenced to a term of incarceration of twelve to twenty-four months for the conviction of reckless burning or exploding, and a concurrent term of incarceration of forty-eight to ninety-six months for the conviction of arson involving danger of death or bodily injury.  Saunders was also ordered to pay restitution in the amounts of $250.00, which was for the insurance deductible for Marshall's vehicle that was destroyed by the fire, and $300.00, which was for the broken windshield of Bigley's vehicle.  Post-sentence motions were filed on February 10, 2017, which were denied by the trial court on February 22, 2017.  Saunders then appealed to the Superior Court.

The Superior Court affirmed the conviction and sentence but vacated that portion of the judgment of sentence awarding $300.00 in restitution to Bigley for the broken windshield.  *See Saunders*, 2018 WL 798655, at *6.  Saunders filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied.  *See Commonwealth v. Saunders*, 647 Pa. 571 (2018) (Table).

Then, on October 10, 2018, Saunders filed a motion seeking relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541-9546.  Counsel was appointed and filed a supplement to Saunders' pro se petition.  No hearing was conducted by the PCRA court.[4]  The

---

[4] The Pennsylvania Courts of Common Pleas have original jurisdiction over PCRA petitions. 42 Pa. Cons. Stat. Ann. § 9545(a).  PCRA dispositions from the Courts of Common Pleas are appealable to the Pennsylvania Superior Courts. *See, e.g., Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007).  Herein, the Court will refer to the

PCRA court issued a notice pursuant to Pennsylvania Rule of Criminal Procedure 907, informing Saunders of its intent to dismiss the petition and Saunders did not respond.  The PCRA court dismissed Saunders' petition on February 11, 2019.  Saunders appealed to the Superior Court, which affirmed.  *See Commonwealth v. Saunders*, 2020 WL 359727 (Pa. Super. Ct. Jan. 21, 2020).  Again, Saunders filed a petition seeking leave to appeal to the Supreme Court of Pennsylvania.  His petition was denied.  *See Commonwealth v. Saunders*, 237 A.3d 386 (Pa. July 15, 2020) (Table).

Saunders' instant petition for habeas relief was docketed with this Court on August 31, 2020.  *See* ECF No. 25.[5]  After receiving multiple extensions of time, the Respondents answered the petition on December 30, 2020.  *See* ECF No. 22.  Saunders' Reply was docketed on February 8, 2021, and the Petition is thus ready for disposition.  *See* ECF No. 28.

II.      Standards of Decision

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law."  *Harrington v. Richter*, 562 U.S. 86, 91 (2011).  Federal courts reviewing habeas corpus petitions "must be vigilant and independent ... a commitment that entails substantial judicial resources."  *Id.*  This vigilance and independence must be balanced, however, against the concomitant role of the state courts.  To that end, the United States Supreme Court has cautioned federal courts to remember

> … that direct appeal is the primary avenue for review of a
> conviction or sentence ….  The role of federal habeas proceedings,
> while important in assuring that constitutional rights are observed,

---

Court of Common Pleas that heard Diaz' PCRA petition as the "PCRA court."  *See, e.g., Boyer v. Houtzdale,* 620 Fed. Appx. 118, 121, n.2 (3d Cir. Aug. 4, 2015).

[5] Saunders' petition was originally docketed with the United States District Court for the Middle District of Pennsylvania on August 2, 2020.  *See* ECF No. 1.  That Court transferred the petition to this Court the next day.  *See* ECF No. 6.  Saunders' motion to proceed in forma pauperis was denied on August 19, 2020, and the appropriate filing fee was paid on August 31, 2020.  *See* ECF No. 9; ECF No. 10.  His petition was docketed that same day.  *See* ECF No. 25.

> is secondary and limited.  Federal courts are not forums in which
> to relitigate state trials.

*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

That secondary and limited role is reflected in the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  That statute "imposes significant procedural and substantive limitations on the scope" of a federal court's review.  *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017).  Under 28 U.S.C. § 2254, federal courts must give considerable deference to determinations of state trial and appellate courts.  *See Turner v. Ransom*, 2021 WL 2581251, at *2 (W.D. Pa. June 23, 2021) (citing *Renico v. Lett*, 599 U.S. 766, 772 (2010)).  It is Saunders' burden, as the petitioner, to prove he is entitled to the writ.  *Id*.; *see also Turner,* 2021 WL 2581251, at *1 (citing *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017)).

Before the Court can review the merits of Saunders' claims, he must first satisfy specific and precise procedural standards.  *See, e.g., Smart v. Pennsylvania*, 2021 WL 1091277, at *3 (M.D. Pa. Feb. 16, 2021).  The Supreme Court has explained the gate-keeping function of these procedural standards: "The [AEDPA] established a stringent set of procedures that a prisoner 'in custody pursuant to the judgment of state court'" must follow when seeking the Great Writ. *Burton v. Stewart*, 549 U.S. 147, 152 (2007) (citing 28 U.S.C. § 2244(b)).  These "intentionally restrictive" prerequisites include a statute of limitations for filing a habeas petition and a constraint that any claims be first exhausted in the state courts.  *See, e.g., Bond v. Walsh*, 2020 WL 6939883 at *4 (E.D. Pa. Nov. 24, 2020).  Under the AEDPA, a petition for habeas relief must be filed within one year from "the date on which the judgment became final by conclusion of direct review or the expiration of time for seeking such review."  *Burton*, 549 U.S. at 156-57

(citation to statute omitted).  The statute further mandates that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 201)

A.  Timeliness

The AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review.  It is codified at 28 U.S.C. § 2244(d) and provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry.  First, a court

must determine the "trigger date" for the one-year limitations period pursuant to section

2244(d)(1). *See Caldwell v. Mahally, et al.*, 5741706, *5 (W.D. Pa. Nov. 5, 2019). Second, the

court must determine whether any "properly filed" applications for post-conviction or collateral

relief were pending during the limitations period that would toll the statute under section

2244(d)(2). *Id.* And third, the court must determine whether any of the other statutory

exceptions or equitable tolling should be applied on the facts presented. *Id.*

      As noted above, Saunders' petition raises numerous claims relating to his conviction.

The "trigger date" for these claims is the date on which Saunders' judgment of sentence became

final. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes

final after direct review or the expiration of time for seeking such review, including the time

limit (90 days) for filing a writ of certiorari in the United States Supreme Court). Upon the

conclusion of his trial, Saunders appealed to the Superior Court, which affirmed his conviction

and resentencing on February 9, 2018. Saunders then filed his petition for allowance of appeal

with the Supreme Court of Pennsylvania, which was denied on August 13, 2018. He did not file

a petition for Writ of Certiorari with the United States Supreme Court. Thus, his judgment of

sentence became final on November 11, 2018. *See Jones v. Morton,* 195 F.3d 153, 157 (3d Cir.

1999) (quoting *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999) and citing *Morris v.

Horn,* 187 F.3d 333, 337 n.1 (3d Cir. 1999)); *Commonwealth v. Graham*, 268 A.3d 405 (Pa.

Super. Ct. 2021) ("A judgment of sentence becomes final ninety days after a petition for

allowance of appeal is denied by the Pennsylvania Supreme Court, when time for filing a petition

for writ of certiorari to the United States Supreme Court expires."). However, prior to that date

(on October 10, 2018), Saunders filed a petition seeking post-conviction relief in the state court.

So no time began to run on the one-year AEDPA clock until July 15, 2020, when the Supreme

Court of Pennsylvania denied Saunders permission to appeal from the denial of PCRA relief. This means his habeas petition was due on or before July 15, 2021. Saunders certified that he gave his habeas petition to prison officials for mailing on July 27, 2020. *See* ECF No. 25, p. 16. This Court will deem it filed as of that date. *See, e.g., Blackwell v. Superintendent, SCI-Somerset*, 2022 WL 659192, at *2 n.2 (E.D. Pa. Jan. 11, 2022). Thus, Saunders' petition is timely filed.

      B.      Exhaustion and Procedural Default

As a general matter, a federal district court may not consider the merits of a habeas petition unless the petitioner has "exhausted the remedies available" in state court. See 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner satisfies the exhaustion requirement "only if [the petitioner] can show that [he or she] fairly presented the federal claim at each level of the established state-court system for review." *Hollow ay v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). The purpose of the exhaustion requirement is to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts ... by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

To "fairly present" a claim for exhaustion purposes, the petitioner must advance the claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845; *see also Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Either way, the petitioner must

present his federal constitutional claims "to each level of the state courts empowered to hear those claims." *Id*. at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "In Pennsylvania, the fair presentation requirement means that a petitioner must bring the claim to the Pennsylvania Superior Court." *Gibbs v. Estock*, 2021 WL 1842717, at *2 (E.D. Pa. Apr. 22, 2021), *report and recommendation adopted*, 2021 WL 1837431 (E.D. Pa. May 7, 2021), *certificate of appealability denied sub nom. Gibbs v. Superintendent Pine Grove SCI*, 2021 WL 5859469 (3d Cir. Aug. 24, 2021) (other citations omitted). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989)).

An important corollary to the exhaustion requirement is the doctrine of procedural default. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of those claims "in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Procedural default intertwines with exhaustion in this way: when a claim has never been "'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied" because of the lack of available state process, but the claims "are considered to be procedurally defaulted." *McKenzie v. Tice*, 2020 WL 1330668, at *5 (M.D. Pa. Mar. 23, 2020) (quoting *McCandless*, 172 F.3d at 261. Such claims may not ordinarily be reviewed by a federal court. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that

is, claims that the state court denied based on an adequate and independent state procedural rule.") (citations omitted).

Several caveats exist.  First, "[a] state procedural rule can preclude federal habeas corpus review" only when the state rule is "independent of the federal question [presented] and adequate to support the judgment."  *McKenzie*, 2020 WL 1330668, at \*5 (quoting *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007)).  A rule is "independent" if it is not "'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims."  *Id*. (quoting *Johnson v. Pinchak,* 392 F.3d 551, 557 (3d Cir. 2004)).  A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default."  *Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

Second, a petitioner can overcome procedural default, thereby permitting federal court review, if the petitioner can establish either: (1) "cause" for the default and "actual prejudice" because of the alleged violation of federal law; or (2) that the failure to consider the claims will create a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  To establish cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with a state procedural rule.  *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To establish a fundamental miscarriage of justice, a habeas petitioner must typically show actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 324-26 (1995).  With these standards and rules in mind, the Court now turns to a discussion of Saunders' claims.

C.    Saunders' habeas claims are procedurally defaulted.

Saunders raises the following claims in his habeas petition:

| Claim No. | Ground(s) for Relief |
|---|---|
| 1 | The Commonwealth presented insufficient evidence to convict the Defendant of arson-endangering persons and reckless burning. |
| 2 | Violations of Saunders' Fourth, Sixth, and 14th Amendments, premised on the police's fabrication of information; ineffective assistance of defense counsel; illegal amendment of the information prior to trial; showing of a video without attribution, in violation of the Confrontation Clause. |
| 3 | Ineffective Assistance of counsel (trial, appellate and post-conviction counsel); as set forth in Attachment C to the petition. |
| 4. | Conviction of reckless burning was illegal where the value of the vehicle did not satisfy the statutory requirement. |
| 5 | Count Three of the information was "fatally deficient" where it did not reference or designate a victim. |
| 6 | The prosecution violated Saunders' right to due process by amending the Information directly prior to the trial. |
| 7 | The Commonwealth withheld exculpatory evidence. |
| 8 | The Superior Court erred when it accepted the PCRA court's opinion |

ECF No. 25, p. 6-14. A habeas petitioner has the burden of showing all his alleged claims have been "fairly presented" to the state courts, which demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts. *Santana v. Fenton,* 685 F.2d 71, 73-74 (3rd Cir. 1982), *cert. denied*, 459 U.S. 1115 (1983). A determination whether a claim has been fairly presented involves comparing the claims raised in Saunders' habeas petition to those raised in state court. On direct appeal to the Superior Court, Saunders only raised three issues:

- Did the Commonwealth present insufficient evidence to sustain [Saunders'] convictions for Arson Endangering Persons and Reckless Burning where the Commonwealth did not demonstrate that [Saunders] set the fire or that the fire placed any person in danger of death or bodily injury?

- Were the trial court's verdicts contrary to the weight of the evidence where the trial court relied upon inconsistent or inconclusive evidence to convict [Saunders]?

- Did the trial court err and impose an illegal sentence by ordering [Saunders] to pay restitution to Mr. Scott Bigley for alleged damage to a windshield where [Saunders] was not convicted of any crime where Mr. Bigley was a victim?

*Saunders*, 2018 WL 798655, at *2.  The first two issues raised on direct appeal concern the

sufficiency of the evidence against Saunders.  These issues implicate the first claim in his habeas

petition, which means Saunders has exhausted his first habeas claim concerning the sufficiency

of the evidence.[6]  In his appeal to the Superior Court following the denial of PCRA relief,

Saunders raised the following issues:

- Whether the bench trial record before the [c]ourt as to the instant case afforded circumstantial evidence at best and was more so speculative and [constituted] conjecture as to whether the fire was even incendiary in nature or where it started and certainly as to whether there was any nexus to [Saunders] as the cause and thus there was insufficient evidence to sustain the guilty verdicts as the Commonwealth failed to prove that the fire was incendiary in nature; that anyone was placed in danger of death or bodily injury; and that [Saunders] even set the fire?

- Whether the conviction for reckless burning was without any legal predicate wherein the value of the vehicle involved did not satisfy the statutory elements?

- Whether [d]efense counsel was ineffective in various respects as outlined in the pro se PCRA [p]etition and supporting appendix?

- Whether the amended information charged at count 3, endangering persons, was fatally deficient given that a victim is not designated?

- Whether the Commonwealth violated [Saunders'] right to due process by amending the information on the day of the trial to include an additional offense in direct violation of the Pennsylvania rules of criminal procedure?

- Whether counsel failed to investigate and offer exculpatory evidence that was available and would have changed the outcome at trial as enumerated fully in the pro se pleadings?

- Whether the sentence was outside of the sentencing guidelines and was illegal given an error in the calculation of [Saunders'] prior record score?

- Whether the [c]ourt and the Commonwealth discussed the case in chambers prior to trial and not in open court in violation of rules proscribing ex parte communications?

---

[6] The Superior Court granted Saunders relief on his third issue relating to the restitution ordered in favor of Bigley and, consequently, that issue is not raised in Saunders' habeas petition.

*Saunders*, 2020 WL 359727, at *2.  Some of these claims mirror those raised in Saunders'

habeas petition.  For example, Saunders' habeas claim that the Commonwealth improperly

amended the criminal information on the eve of trial was also presented to the state courts.  So

too was his issue relating to the "fatally deficient" information (for not containing the name of

the victim) presented to the state court.  However, other claims appear not to have been brought

to the state court's attention.  Saunders' *Brady* claim (Habeas Claim No. 7) was not raised to the

Superior Court either on direct appeal or in post-conviction proceedings.  Nor was Saunders'

general claim that the Superior Court erred when it "accepted the PCRA court's opinion (Habeas

Claim 10) or his claim of ineffective assistance of PCRA counsel (Habeas Claim 2) raised to the

state courts.  Thus, Saunders' petition contains both exhausted and unexhausted claims.

Typically, when a federal court is presented with a "mixed" petition—including

exhausted and unexhausted claims—the court must dismiss the petition.  *Rose v. Lundy*, 455 U.S.

509, 523 (1982).  But *Lundy* does not apply where the petitioner has failed to exhaust state

remedies and "the court to which the petitioner would be required to present his claims in order

to meet the exhaustion requirement would now find the claims procedurally barred."  *Coleman,*

501 U.S. at 735 n.1.  In such a situation, the claims are procedurally defaulted for purposes of

federal habeas.  *Id*.  Similarly, federal habeas review is barred where a petitioner has defaulted

his federal claims in state court pursuant to an independent and adequate state procedural rule.

*Id*. at 750.  This is the situation presented by Saunders' petition.

In disposing of the claims Saunders raised in his post-conviction appeal, the Superior

Court determined that the deficiencies of his brief resulted in a waiver of Saunders' claims on

appeal.  The state court concluded that

> … we must address the deficiencies in this brief.  Although
> [Saunders] raises eight issues in his statement of the questions

13

> involved, his argument section spans a mere four-and-a-half pages
> and contains citations to only six cases.  In each of his issues,
> [Saunders] includes no citations to the record, fails to adequately
> discuss relevant law, and proffers little (if any) meaningful legal
> analysis in relation to the facts of his case.  Thus, we deem all of
> [Saunders'] claims waived on this basis.

*Saunders*, 202359727, at *3-4.  The Superior Court relied on Pennsylvania Rule of Appellate

Procedure 2119(a), which requires that each argument presented on appeal be "followed by such

discussion and citation of authorities as are deemed pertinent."  Pennsylvania Rule of Appellate

Procedure 2119(a).  Federal habeas courts in this Circuit have concluded that Rule 2119(a) is an

independent and adequate state court rule for purposes of default.  *See, e.g., Maitland v. Gilmore*,

2019 WL 4194201, at *6 (M.D. Sept. 4, 2019) (collecting cases); *Rodriguez v. Giroux*, 2017 WL

10821396, at *17 (E.D. Pa. Feb. 17, 2017), *Report and Recommendation adopted*, 2019 WL

587314 (E.D. Pa. Feb. 12, 2019) (collecting cases).  There is no dispute that the waiver rule was

firmly established, readily ascertainable, and regularly followed at the time of the default.  *See*

*Leake v. Dillman*, 594 Fed. Appx. 756, 758-59 (3d Cir. 2014) ("The requirement that Petitioner

must meaningfully develop his arguments on appeal and cite to appropriate authorities has been

stated in unmistakable terms by the Pennsylvania Supreme Court, and is embodied in the state's

rules of appellate procedure.").  Thus, Claims 2, 3, 4, 5, and 6 as presented in Saunders' habeas

petition are procedurally defaulted.

This Court cannot consider these claims unless Saunders establishes cause and prejudice

or a fundamental miscarriage of justice sufficient to excuse the default.  *Preston v.*

*Superintendent Graterford SCI*, 902 F.3d 365, 375 (3d Cir. 2018) (stating that federal courts may

not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate

"cause" to excuse the default and "actual prejudice resulting from the alleged constitutional

violation.).  Saunders has not met this burden.  As a result, Claims 2, 3, 4, 5, and 6 will be denied

because they are procedurally defaulted and federal review is barred.  Remaining for this Court's

consideration is the lone unexhausted claim relating to the sufficiency of the evidence.

III.    Discussion and Analysis

Having disposed of those claims which are procedurally defaulted, one claim remains for

review on the merits.

A.      Ground 1: Sufficiency of the Evidence

Saunders challenges the sufficiency of the evidence to support his conviction.  He

contends that:

> The Commonwealth presented insufficient evidence to convict the
> Defendant of Arson-Endangering Persons and Reckless Burning.
> There was no direct evidence linking the Defendant to the fire.
> The Commonwealth's expert (Fire Marshal/Trp. Hamilton) could
> not determine if the fire was intentional or an accident, could not
> determine where the fire started or how the fire started, therefore
> this fire could not have been ruled an arson.  The Commonwealth
> never presented any testimonial evidence from anyone that they
> were placed in danger.

ECF No. 25, p. 5.  Because the Superior Court denied this claim on its merits on direct appeal,

AEDPA's deferential standard of review applies.  That is, Saunders must show that the state

courts' adjudication of this claim was contrary to or an unreasonable application of clearly

established federal law or based on an unreasonable determination of the facts.  *See* 28 U.S.C. §

2254(d).

The "clearly established Federal law" governing sufficiency of the evidence claims is set

forth in the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979).

Under *Jackson*, evidence is sufficient to support a conviction if, "after reviewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that juror 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Jackson*, 443 U.S. at 319).

In rejecting Saunders' sufficiency of the evidence claim, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard. *See Saunders*, 2018 WL 798655, at *2. *See also Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (noting that the test for sufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). *See, e.g., Williams*, 529 U.S. at 405-06. Therefore, the only remaining question is whether the Superior Court's decision amounted to an "unreasonable application" of *Jackson*. To this end, the United States Supreme Court has made clear that:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury ... to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S.766 (2010)).
>
> [T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that

> determination in turn is entitled to considerable deference under
> AEDPA, 28 U.S.C. § 2254(d).

*Coleman*, 566 U.S. at 651, 656.  In addressing Saunders' sufficiency claim on direct appeal, the

Superior Court adopted the reasoning of the trial court in concluding that the evidence was

sufficient to support the conviction.  *See Saunders*, 2018 WL 798655, at *3.  The state court first

outlined and summarized the Commonwealth's evidence, including the testimony of Deborah

Marshall, Scott Bigley, Wayne McCartney, and Pennsylvania State Trooper John Stefanik.  *Id*.

(attachment) (Trial Court opinion pp. 7-13).[7]  Further, the Commonwealth's evidence included

head-mounted video footage from firefighters, cigarettes recovered from the scene, a note left on

the car windshield, photographs, statements, interviews of and voicemail messages from

Saunders and a report from Trooper Kenneth A. Hamilton, a deputy fire marshal from the

Pennsylvania State Police.  *Id*. (Trial Court opinion pp. 13-15).  Upon review of this evidence,

the state court determined:

> As to the convictions for arson at 18 Pa. C.S.A. §§3301(d)(2) and
> 3301(a)(1)(i), viewing the evidence in the light most favorable to
> the Commonwealth together with all reasonable inferences from
> that evidence, the trier of fact could have found the evidence
> established beyond a reasonable doubt the fire was incendiary in
> origin.  The testimony of Trooper Stefanik and Hamilton, together
> with the videos of the fire and the photographs, sufficiently
> established the fire was caused from outside of the vehicle by
> human intervention.  [Saunders] claims the Commonwealth failed
> to sufficiently establish the fire was incendiary must be dismissed
> as meritless.
>
> Also as to both arson convictions, viewing the evidence in the light
> most favorable to the Commonwealth together with all reasonable
> inferences from that evidence, the trier of fact could have found the
> evidence beyond a reasonable doubt that [Saunders] set the fire.
> "[P]roof of guilt, 'especially in arson cases,' may be established by
> circumstantial evidence."  Although motive is not an essential
> element of the crime it is always relevant and admissible.

---

[7] Also filed at ECF No. 23-4.

> The evidence established [Saunders] was angry and upset when
> Marshall and Bigley drove from the parking lot where Marshall's
> vehicle was located.  [Saunders] was angry when Marshall
> rebuffed [Saunders'] unwanted physical advances during
> Marshall's walk at the reservoir.  He remained upset when
> Marshall and Bigley fled the parking lot in Bigley's vehicle.  At
> that time, [Saunders] struck and cracked Bigley's windshield.  As
> Bigley drove way, [Saunders] continued to approach Bigley's
> vehicle in an angry manner.
>
> Marshall's vehicle was not on fire when Marshall and Bigley drove
> away in Bigley's vehicle.
>
> Later that evening, Marshall discovered three voice mail messages
> from [Saunders] left between approximately 8:00 p.m. and 11:00
> p.m.  In two of the three messages, [Saunders] referred to
> Marshall's actions of that evening as being the "dumbest thing."
> "Dumb," the root of the word used repeatedly in the voicemails
> from [Saunders], was one of the words on the handwritten note a
> firefighter recovered from the windshield of Marshall's vehicle.

*Id*. (Trial Court Opinion at 17-19).  Further, the state court noted that independent witness

McCartney, who was present at the scene, detected the "strong odor" of gasoline.  *Id*.  He further

observed brownish-colored, "large, four-door vehicle" parked next to Marshall's vehicle and

stated that the gasoline odor could have come from either of those vehicles.  *Id*.  McCartney

further stated that he saw a male "lift his head up from the seat of the brownish vehicle" and look

in McCartney's direction.  *Id*.  He saw this male exit that vehicle and stand next to Marshall's

vehicle several times.  *Id*.  Based on this evidence, the state court concluded that

> … it would have been reasonable to conclude that, by the time
> McCartney returned to the [parking] lot to pack up his biking gear,
> Bigley and Marshall had departed in Bigley's vehicle, and it was
> [Saunders'] vehicle which McCartney observed parked right
> beside Marshall's Jaguar.  It would have been reasonable to
> conclude the person McCartney observed "hanging out" in the
> vehicle parked next to Marshall's was [Saunders.]

*Id*.  The state court then determined that:

> The evidence sufficiently established [Saunders'] motive and opportunity for setting the fire.  This evidence, combined with the note left on Marshall's windshield, [Saunders'] voicemail messages to Marshall the evening of the incident and the physical evidence at the scene including the partially smoked Marlboro cigarette and the empty Marlboro pack (Marlboro being a brand of cigarettes smoked by Appellant), inter alia, provided sufficient evidence for the Court to determine beyond a reasonable doubt [Saunders] was responsible for the fire.

*Id.*

Concerning Saunders' conviction under 18 Pa. C.S.A. §3301(a)(1), the state court relied on the video of the fire taken from the helmet-cam of a responding firefighter as evidence that the fire placed emergency response personnel who responded to the scene in danger of death or bodily injury.  *Id.* (Trial Court opinion at 20-21).  The state court specifically noted the billowing smoke, flying shards of glass from the breaking of the vehicle's windows, and the use of protective gear, facemasks, and oxygen tanks by firefighters as evidence of the concomitant dangers.  *Id.*

Thus, the state court's decision is neither contrary to, nor an unreasonable application of, the Jackson sufficiency standard.  Considering the evidence in the light most favorable to the Commonwealth, the prosecution met its burden to establish that Saunders was the perpetrator of the offenses.  Through the testimony of eyewitnesses and corroborating video footage, the Commonwealth reasonably identified Saunders as the offender.  Because the Superior Court reasonably held that the evidence was sufficient to support each element of the offenses and to identify Saunders as the perpetrator of those offenses, this ground for relief will be dismissed. *See, e.g., Dean v. Tice*, 2020 WL 293325 (W.D. Pa. June 2, 2020).

IV.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A).  It also provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id*. § 2253(c)(2).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.  Applying that standard here, jurists of reason would not find it debatable whether Saunders' claims should be dismissed because lack merit or are procedurally defaulted.  For these reasons then, the Court will not issue a certificate of appealability.

V.      Conclusion

For the reasons set forth above, Saunders' Petition for a Writ of Habeas Corpus will be dismissed, and no certificate of appealability will issue.  An appropriate order follows.


ORDER

AND NOW, this 8th day of April, 2022, for the reasons set forth in the Memorandum filed contemporaneously, IT IS HEREBY ORDERED that Petitioner Timothy C. Saunders'

claims for federal habeas corpus relief are DISMISSED with prejudice and a certificate of appealability is DENIED as to each claim.  The Clerk of Court is directed to mark this case CLOSED as of this date.


BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

21